IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| GERALD WRICE, <br> Institutional ID No. 01512884, <br><br> Plaintiff, <br><br> v. <br><br> ROBERT MARTIN, *et al.*, <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No. 1:22-CV-00041-BU |

## **ORDER OF DISMISSAL**

Plaintiff GERALD WRICE, proceeding pro se, is an inmate currently incarcerated by the Texas Department of Criminal Justice at the Robertson Unit in Abilene, Texas. Dkt. No. 2 at 3. He brings this lawsuit under 42 U.S.C. § 1983 alleging violations of his constitutional right to medical treatment by employees of TDCJ's Robertson Unit. *Id.* Wrice received leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. Dkt. No. 6. This case was then transferred to the undersigned for an initial case review under 28 U.S.C. §§ 1915 and 1915A. Dkt. No. 7. Wrice has consented to the undersigned conducting all further proceedings. Dkt. No. 11.

After careful consideration of the claims in Wrice's Complaint and the amendments to those claims through his responses to the Court's questionnaire, *see* Dkt. No. 12, the Court finds that Wrice's claims must be dismissed.

1

I. <u>BACKGROUND</u>

Wrice was and remains incarcerated at the Robertson Unit. He brings claims of deliberate indifference to serious medical needs against six medical employees at Robertson Unit. Dkt. No. 2 at 5. In his Complaint, Wrice alleges that medical staff at Robertson failed to provide him with appropriate medical evaluation and treatment for his "pain and irregular condition of [his] bones and joints of [his] shoulders, collarbone, knees, and foot." *Id.* at 4. Injuries which appear to have begun after "falling coming down from the top bunk." Dkt. No. 12 at 6. Wrice's Complaint details his allegations against each Defendant, and states that:

> Robert Martin MD: refused on several occasions to listen and admonish my needs of my physical well-being each time I would visit his office as he would try to compare my symptoms to his very own symptoms. He never seem to take me serious. Refusing to give me a MRI.
>
> Jackie Gregory FNP: Also refused my request for a MRI as Dr. Martin. On several occasions she never to my medical needs seriously and deliberately neglected my medical needs which has resulted in my longtime pain and suffering.
>
> Ermias Adebe FNP: during the few times in which I saw him on the French Robertson Unit, he was deliberately indifferent by neglecting the seriousness of my aches and pains, only wanted to medicate me.
>
> Ginger Fabrizio PA: during her stay at the French Robertson Unit did order and get me xrays, but did not go far enough. Once she refused to lift my restriction to what I had, claiming that climbing the stairs would help my condition, but only made it worse where I suffered more additional pain in my knees.

> Tani Lynn Deer PA: on the time I visited her on occasion, she would yell and scream at me saying that nothing was wrong with me. She deliberately neglected my medical needs and refused to properly treat them.
>
> Ronald Williams Md – Medical Director: during his stay on the French Robertson Unit, as I saw him and let him know of my condition and the pain in my shoulders and collarbone, his statement was that it was only muscle. Refusing and neglecting to properly treat or look into my condition, the pain that I still experience daily, and I endure the pain although I know that something is not right. I can't do any lifting or regular exercises or any other normal activities without experiencing pain and suffering.

Dkt. No. 2 at 5. In the answers to his questionnaire, Wrice states that due to the lack of care provided by Defendants, he suffers from shoulder pain, collarbone pain, a knee injury, and foot swelling. Dkt. No. 12 at 6. Wrice seeks injunctive relief for his claims. *Id.* at 6.

## II. LEGAL STANDARDS

A court must dismiss a complaint filed by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable

basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Dismissal for failure to state a claim—whether under Section 1915(e)(2)(B)(ii), Section 1915A(b)(1), or Rule 12(b)(6)—"turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court. *Johnson*, 574 U.S. at 11–12 (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept *well-pleaded* factual allegations as true. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). This means the factual allegations, while not required to be detailed, must amount to more than mere labels, conclusions, or a statement of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

For claims to be substantively plausible, a plaintiff need not establish that the pleaded facts probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*,

4

634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–79). Even pro se plaintiffs must plead facts that raise the right to relief above a speculative level. *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When evaluating a complaint under these standards, courts liberally construe the pleadings of pro se plaintiffs, holding their complaints to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

5

III. ANALYSIS

Wrice sues six Robertson Unit medical employees: (1) Dr. Robert Martin; (2) Jackie Gregory; (3) Ermias Abebe; (4) Ginger Fabrizio; (5) Tani Lynn Deer; and (6) Dr. Ronald Williams. Dkt. No. 2 at 5. He alleges that each was deliberately indifferent to his shoulder, collarbone, and knee pain.

Under the Eighth Amendment, prison officials have a duty to provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). An inmate seeking to establish an Eighth Amendment violation regarding medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs") (emphasis in original) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

"Deliberate indifference" means that the denial of medical treatment was "much more likely than not to result in serious medical consequences, and additionally that the defendants had sufficient knowledge of the situation so that the denial of medical care constituted wanton disregard of the prisoner's rights." *Johnson v. Treen*, 759 F.2d 1231, 1238 (5th Cir. 1985). In other words, "the plaintiff must show that the officials refused to treat

him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021)

To successfully claim a deliberate indifference to medical needs, a plaintiff must satisfy both an objective and subjective test. *Rogers*, 709 F.3d at 410. An inmate must first prove an objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). As to the subjective component, a prison official acts with deliberate indifference only where he (1) knows the inmate faces a substantial risk of serious harm and (2) disregards that risk by failing to take reasonable measures to abate it. *Id.* at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. Similarly, an inmate's disagreement with the medical treatment provided does not give rise to a constitutional claim. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). "[T]he decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (quoting *Estelle,* 429 U.S. at 107. "And, the 'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference." *Id*. (quoting *Farmer,* 511 U.S. at 838).

Wrice's allegations primarily highlight his disagreement with the treatment provided by Robertson medical staff and his belief that Defendants failed to provide him with

7

additional diagnostic treatment for his shoulder, collarbone, and knee pain. However, Wrice's Complaint and the clarification of his allegations through his questionnaire responses fail to plead sufficient facts to state a viable deliberate indifference claim. Wrice does not plead facts that support the conclusion that his collarbone pain, shoulder pain, and knee pain constituted a serious medical need for which he can state an actionable claim. *Billizone v. Jefferson Par. Corr. Ctr.*, No. 14–1263–SS, 2014 WL 7139636, at *2 (E.D. La. Dec. 15, 2014) (dismissing plaintiff's deliberate indifference claim in part because his "back pain and shoulder pain simply do not rise to the level of serious medical needs") (internal quotation marks and citation omitted). And even if the Court assumes he was exposed to a sufficiently serious medical need, his allegations fail to plausibly support that the Defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Nonetheless, the Court will address Wrice's claims against each Defendant in turn.

1. *Dr. Robert Martin*

Wrice alleges that Dr. Martin failed to provide him with appropriate evaluation and treatment regarding the pain in his shoulder, collarbone, and knees. Dkt. No. 2 at 5. In his questionnaire responses, Wrice states that Dr. Martin "spent more time typing in the computer than listening to what was my problems" and that "[Dr. Martin] refused to grant me getting a MRI deliberately." Dkt. No. 12 at 6. Wrice also appears to complain about Dr.

8

Martin's refusal to grant him a bottom bunk restriction, stating that, "Dr. Martin claimed on numerous occasions that too many people had bottom bunk restrictions and that did not have anything to do with what was my condition . . . ." *Id.* Wrice also expresses his frustrations with Dr. Martin, stating that "Dr. Martin would always say that he had similar symptoms and that when you get up in age these things happen, but his body has nothing to do with what is wrong in my body." *Id.*

Here, even accepting that Wrice's medical conditions each constituted an objective exposure to a substantial risk of serious bodily harm, his claims fail to plausibly demonstrate that Dr. Martin knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.

Wrice provides multiple and extensive timelines for his medical treatment in his questionnaire responses, spanning over a six-year period. Through his own admission, he states that he visited Dr. Martin for his knee, shoulder, and collar bone pain at least 5 times.[1] The dates relating to his allegations against Dr. Martin are as follows: (1) after his visit to Dr. Martin on March 12, 2020, he received an x-ray for his knees on September 10, 2020, and then an x-ray for his hip on September 16, 2020; (2) Wrice received steroid injections in both of his knees in October 1, 2020; (3) after his annual physical with Dr. Martin on

---

[1] "10-17-19, Dr. Martin prescribed me Naproxen, 30 days;" "12-19-19, Dr. Martin prescribed Naxproxen for inflammation/pain, 30 days;" "3-12-20, Dr. Martin telling me what he could not do, MRI, give back lower floor restriction, comparing his symptoms to mine;" "On 7-6-21 had an annual physical, it you want to call it that, by Dr. Martin;" "On 7-16-21, I saw Dr. Martin in which he did a lot of typing in the computer and as always, try to compare what is my symptoms to the same as his, also x-ray results, arthritis." Dkt. No. 12 at 2.

9

July 6, 2021, he then received an x-ray three days later on his right shoulder and right knee; and (4) finally, on September 16, 2021, Wrice states that the x-ray results showed that he suffered from arthritis. Dkt. No. 12 at 2.

The timeline provided by Wrice fails to establish that Dr. Martin disregarded Wrice's pain in his knees and shoulder, and instead demonstrates that Dr. Martin provided Wrice with care in relation to his complaints, even if it was not the care Wrice wanted. Moreover, Wrice's questionnaire responses do not state that Dr. Martin refused to see him or provide him *any* medical treatment. While Wrice alleges that the x-rays ordered by Dr. Martin "was not showing what was wrong," and that he "requested an MRI but was being refused," and "[Dr. Martin] continued to prescribe medication when I know something is not right," Dkt. No. 12 at 4, these statements merely reflect Wrice's disagreement with the medical treatment provided by Dr. Martin, not that Dr. Martin was ignoring his medical conditions.

Wrice's belief that Dr. Martin should have ordered additional diagnostic tests, such as an MRI, to evaluate his injury amounts to an unactionable disagreement with the specifics of his medical care and the doctor's judgment about which diagnostic tools to use. *Estelle* 429 U.S. 97 at 107 (explaining that the decision whether to order "an X-ray or additional diagnostic techniques or forms of treatment . . . is a classic example of a matter for medical judgment" and the decision not to do so "does not represent cruel and unusual punishment"). Wrice's disagreement with Dr. Martin's medical judgment might support a

10

negligence or medical malpractice claim, but it fails to meet the high bar required for a deliberate indifference claim under § 1983. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (explaining that "[u]nsuccessful medical treatment . . . negligence, neglect or medical malpractice" are all unactionable under § 1983) (internal quotation marks and citation omitted).

Additionally, Wrice's belief that Dr. Martin should have provided him with a bottom bunk restriction also amounts to no more than a disagreement with medical treatment. *See Wilson v. McGinnis*, 651 F. App'x 263, 264 (5th Cir. 2016) ("[Prisoner's] argument that [defendant] was deliberately indifferent because she did not order a permanent bottom bunk restriction is unavailing, because it represents a mere disagreement with [defendant's] methods to treat his medical problem.").

Indeed, Wrice's pleadings demonstrate that he was regularly examined by Martin and that : (1) he received medication to treat his condition from Dr. Martin; (2) he received at least two x-rays ordered by Dr. Martin (September 10, 2020; September 16, 2020); and (3) Dr. Martin reviewed the results of his x-rays on September 16, 2021, to consider Wrice's ongoing medical needs. These facts all indicate that Dr. Martin provided care and treatment for Wrice's ailments, thus they fail to establish that Dr. Martin was deliberately indifferent to his medical needs. Accordingly, Wrice's deliberate indifference claim against Dr. Martin is dismissed.

   *2. Jackie Gregory*

   Wrice has not pleaded sufficient facts to state a viable deliberate indifference to medical needs claim against Gregory. Even though it appears that Wrice's allegations against Gregory are barred by the two-year statute of limitations, his allegations state a claim of negligence at most.[2] Wrice alleges that Gregory refused his request for an MRI, she did not take his medical complaints seriously, and did not provide him with adequate treatment. Dkt. No. 2 at 5.

   Wrice's allegations against Gregory amount to no more than a disagreement with the medical treatment provided. While he states in his questionnaire responses that Gregory refused to provide him with medical treatment "on several occasions," this accusation falls in the same vein of a disagreement with medical treatment. Dkt. No. 12 at 6. Wrice does not plausibly allege that Gregory refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would show a wanton disregard for his medical needs. Rather, he complains that she refused to treat him specifically as he thought he should be treated.

   And even if Gregory did not respond to each complaint or sick call, this may be evidence of negligence, but falls far short of establishing deliberate indifference. *Stockwell*

---

[2] Wrice provides the following dates in relation to his allegations against Gregory: (1) that Gregory lifted his bottom bunk restriction on March 21, 2017; (2) And on October 26, 2018 "Nurse Gregory did not do much of anything." These dates are not within the tolling period of Wrice's Complaint filed on April 19, 2021. *See* Dkt. No. 2.

*v. Kanan*, 442 F. App'x 911, 914 (5th Cir. 2011) (per curiam) (explaining that a continuation of back pain, while unpleasant, is not a constitutional violation even when care is minimally deficient). Although Wrice complains that Gregory refused to provide him with an MRI, the decision to administer a particular diagnostic exam is again solely a medical determination that is not, without more, a violation of a constitutional right. *Estelle*, 429 U.S. 97 at 107. Accordingly, Wrice's claim against Gregory fails.

3. *Ermias Abebe*

Wrice alleges that Abebe was deliberately indifferent to his medical needs because he: (1) refused to provide Wrice with an MRI and (2) prescribed medication that was not conducive or helpful for his condition. Dkt. No. 12 at 10. According to Wrice's timeline, he was seen by Abebe on July 30, 2021, about two weeks after his last visit with Dr. Martin, and Abebe prescribed him with Naproxen for 30 days. Dkt. No. 12 at 2. Wrice also visited Abebe on March 22, 2022, during which Abebe again prescribed Naproxen for Wrice's shoulder, collarbone and knee pain. *Id.*

Like his allegations against Dr. Martin and Gregory, Wrice's complaints against Abebe amount to nothing more than a disagreement with the medical treatment provided by Abebe. Wrice does not allege that Abebe refused to see him or provide him with medical treatment, but instead complains that he disagreed with the type of care provided. And as already established, Wrice's allegation that Abebe should have provided an MRI, without

13

more, does not qualify as a claim for deliberate indifference. *Norton*, 122 F.3d at 292. Accordingly, Wrice's claim against Abebe is dismissed.

   4. *Ginger Fabrizio, P.A.*

Wrice's primary complaint against Fabrizio is that she refused to provide Wrice with an MRI and that she improperly performed an x-ray because she "did not go far enough." Dkt. No. 12 at 10; Dkt. No. 2 at 7. Wrice also appears to complain about Fabrizio refusing to provide him with a bottom bunk, stating that Fabrizio "would not move me from upstairs saying that the stairs would help, but made my condition more worse." Dkt. No. 12 at 10. Once again, these facts merely establish a disagreement with the medical treatment that Fabrizio provided to him and do not amount to a constitutional violation. For these reasons, Wrice's Complaint against Fabrizio is dismissed.

   5. *Tani Lynn Deer PA and Dr. Ronald Williams*

Wrice asserts identical claims against Deer and Dr. Williams, stating that they were both deliberately indifferent to his medical needs and refused to properly treat him. Dkt. No. 12 at 7. However, Wrice does not allege that either Deer or Dr. Williams refused to provide him with medical care. Here again, Wrice's allegations appear to be nothing more than a disagreement with the treatment provided. Wrice also fails to plead facts demonstrating that either Defendant acted with deliberate indifference towards his medical needs. Accordingly, Wrice's claims against Deer and Dr. Williams are dismissed.

IV. <u>FURTHER LEAVE TO AMEND WOULD BE FUTILE</u>

"Ordinarily, 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.'" *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009)). But leave to amend is not required where an amendment would be futile, *i.e.,* "an amended complaint would still 'fail to survive a Rule 12(b)(6) motion,'" *Stem v. Gomez*, 813 F.3d 205, 215–16 (5th Cir. 2016) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)), or where a plaintiff has already amended his claims, *see Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint.") (citation omitted).

Here, Wrice amended his claims once through his Amended Complaint, and supplemented those claims through his responses to the Court's questionnaire. Both opportunities produced mostly conclusory allegations lacking in factual support and rebutted by the authenticated records. At this point, it is unlikely that Wrice could successfully replead a plausible deliberate indifference claim against Defendants. For this reason, the Court finds that further leave to amend would be futile.

## V. CONCLUSION

For reasons explained in this Order, Wrice's claims of deliberate indifference to serious medical needs and delay in providing treatment against: (1) Dr. Robert Martin; (2) Jackie Gregory; (3) Ermias Abebe; (4) Ginger Fabrizio; (5) Tani Lynn Deer; and (6) Dr. Ronald Williams are DISMISSED for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

ORDERED this 25th day of April, 2024

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE